**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ALBERT ED MUES,**

**Plaintiff,**

      **vs.**                                              **1:12-cv-00241**
                                                                **(MAD/ATB)**

**THE TOWN OF DENNING, NEW YORK;**
**ROBERT BRUNNING, Town Supervisor, Town**
**of Denning, New York; ANDREW DEAN, Councilmen**
**of the Town of Denning, New York; PAUL**
**SCHOONMAKER, Councilmen of the Town of Denning,**
**New York; KEITH SMITH, Councilmen of the Town of**
**Denning, New York; DAVID BROOKS, Councilmen of**
**the Town of Denning, New York,**

**Defendants.**

_____

**APPEARANCES:**                                  **OF COUNSEL:**

**DREW, DAVIDOFF & EDWARDS**        **MICHAEL DAVIDOFF, ESQ.**
**LAW OFFICES, LLP.**
13 Liberty Street
P.O. Drawer 1040
Monticello, New York 12701
Attorneys for Plaintiff

**ROBERT N. ISSEKS**                       **ROBERT N. ISSEKS, ESQ.**
**OFFICE OF LAW**
6 North Street
Middletown, New York 10940
Attorney for Plaintiff

**DRAKE, LOEB, HELLER, KENNEDY,**     **ADAM L. RODD, ESQ.**
**GOGERTY, GABA & RODD, PLLC**        **STEPHEN J. GABA, ESQ.**
555 Hudson Valley Avenue - Suite 100
New Windsor, New York 12553
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

# I. INTRODUCTION

On February 8, 2012, Plaintiff commenced this suit pursuant to 42 U.S.C. § 1983 alleging that Defendants retaliated against him in violation of his "First Amendment rights to free political speech and association." Dkt. No. 1 at ¶ 28. Currently before the Court is Defendants' motion for summary judgment. *See* Dkt. No. 29.

# II. BACKGROUND

The Town of Denning is a municipality located in the County of Ulster, in the State of New York. *See* Dkt. No. 31 at ¶ 1.[1] Plaintiff Albert Mues served as the Recycling Manager (Solid Waste Attendant) for the Town from 2004 to January 3, 2012. *See id.* at ¶ 2. Plaintiff's position of Recycling Manager was a part-time position, requiring Plaintiff to work twelve (12) hours per week during the fall, spring and winter seasons, and fourteen (14) hours per week during the summer season. *See id.* at ¶ 3.

The Town of Denning Town Board consists of one (1) supervisor and four (4) councilmen. *See id.* at ¶ 4. All actions of the Town Board required (and still require) the affirmative vote of a majority of all the members of the Town Board pursuant to Town Law § 63. *See id.* at ¶ 5. During the relevant 2011 to 2012 time period, the four Town Councilmen were Defendants Andrew Dean, David Brooks, Paul Schoonmaker and Kevin Smith. *See id.* at ¶ 6. Defendant Robert Bruning served as a Town Councilman from 2002 to 2004, and then as the Town Supervisor from 2004 to the present. *See id.* at ¶ 7. During the eight (8) year period of time that he served as Recycling Manager, Plaintiff, a Democrat, and Defendant Bruning, a

---

[1] Unless otherwise noted, the facts set forth in the "background" section of this Memorandum-Decision and Order are not in dispute.

Republican, would regularly converse about politics, and would frequently engage in heated discussions about political issues. *See id.* at ¶¶ 8-9. Defendants Dean, Brooks, Schoonmaker and Smith are all Republicans. *See id.* at ¶¶ 10-17.

Defendants contend that, during the time that Plaintiff served as Recycling Manager, the position of Recycling Manager was the only non-appointed position in the Town paid for out of the Town's General Fund. *See* Dkt. No. 29-12 at ¶ 18. Moreover, Defendants claim that on August 22, 2011, Defendant Bruning called the New York Association of Towns for guidance as to whether it was appropriate to maintain the Recycling Manager's position as the only non-appointed position paid for out of the Town's General Fund. *See id.* at ¶ 21. Defendants claim that a representative from the New York Association of Towns advised Defendant Bruning that the position should be changed to an appointed position. *See id.* at ¶ 22. On November 9, 2011, the Town Board enacted Resolution No. 43 of 2011 to redefine the position of Town Recycling Manager as an appointed position. *See* Dkt. No. 31 at ¶ 23.

On August 25, 2011, in anticipation of the then upcoming local elections, Plaintiff sent an email to about thirty-two (32) recipients, copied to Defendant Bruning, regarding the upcoming caucus. The email read as follows:

> Fellow Democrats and perhaps a few not,
> The election for Town Supervisor is rapidly approaching (Nov. 8, 2011). It appears that the Democratic party in the Town of Denning has no candidate for Town Supervisor.
>
> There must be someone who can run for the position for the simple reason that if the current supervisor, Bill Bruning, runs unopposed, then the Town of Denning appears to all to be deeply flawed. No matter what the office, no one should run unopposed. It is un-American and unhealthy for the collective psyche of our town. It doesn't matter that Bill gets elected. He is a very good fiscal manager, and over all, a good Town Supervisor. If someone runs against him, then and only then, will we have autonomy. You don't have to want to be town supervisor to run. Just to be part of a fair

> playing field.  Please consider throwing your hat in the ring.  See
> the announcement attached, FYI.  Pass it on to other Dems you
> know.
> peace and light,
> ed mues

Dkt. No. 1-3 at 1-2.  Attached to this August 25, 2011 email were copies of announcements that

had been published in the local press alerting the public to the upcoming Town of Denning

Democratic Caucus and calling for all prospective candidates seeking the nomination of the local

Democratic Party to contact the Party Chairman.  *See id.* at 3.  On August 31, 2011, Defendant

Bruning spoke to Plaintiff to express that he had taken offense to Plaintiff's email.  *See* Dkt. No.

31 at ¶ 25.

On September 12, 2011, the Town of Denning Democratic Caucus was held and attended

by Defendant Bruning and Plaintiff.  *See id.* at ¶¶ 27-29.  At the caucus, Defendant Bruning was

nominated by the Democratic Chairman to run for Town Supervisor under the Democratic line.

*See id.* at ¶ 29.

In the Fall of 2011, Defendant Bruning advised Plaintiff that there was a problem with

garbage being thrown into the dumpsters at the Recycling Facility.  *See id.* at ¶ 40.  In response to

Defendant Bruning's complaint, Plaintiff advised Defendant Bruning that he could not watch

everyone because "it's a big facility."  *Id.* at ¶ 41.  Plaintiff admitted that one of his job

responsibilities as Recycling Manager was to make sure that only appropriate material is placed

into the dumpsters at the Recycling Facility.  *See id.* at ¶ 42.  Defendants also claim that, in the

Fall of 2011, Defendant Dean smelled alcohol on Plaintiff's breath when he visited Plaintiff

during the early morning hours at the Recycling Facility.  *See* Dkt. No. 29-12 at ¶ 46.  Further,

Defendant Bruning claims that a town resident, Gordon Eck, advised him that he also smelled

alcohol on Plaintiff's breath while Plaintiff was working at the Recycling Facility.  *See id.* at ¶ 47.

The possession or use of alcohol on Town property is a violation of Town policy as set forth in the Town's Employee Handbook. *See* Dkt. No. 31 at ¶ 48.

In December of 2010, Plaintiff injured his back while moving portable stairs at the Recycling Facility. *See id.* at ¶ 49. On January 3, 2011, Plaintiff was cleared to return to work by his treating provider, at "full duty without restrictions." *Id.* at ¶ 50. Defendants claim that, "[a]lthough cleared to return to work at 'full duty without restrictions,' Supervisor Bruning observed that the plaintiff would not move the portable stairs accessing the recycling dumpsters for use by Town residents – as he was required to do for his job." Dkt. No. 29-12 at ¶ 51.[2] Plaintiff complained many times to the Town Board members about how difficult it was to move the stairs to the recycling bins, which was one of his job responsibilities. *See* Dkt. No. 31 at ¶ 52. Plaintiff also complained to Defendant Bruning that his inability to move the steps interfered with his ability to clean the area in between the recycling dumpsters. *See id.* at ¶ 53. Due to Plaintiff's inability to move the stairs at the Recycling Facility, Defendant Bruning had to assist Plaintiff with this task. *See id.* at ¶ 55. Defendants also claim that Plaintiff's injury prevented him from shoveling snow at the Recycling Facility. *See id.* at ¶ 57.

Also, in either May or June of 2011, Defendant Bruning asked Plaintiff to scrape and paint the bottom of the garage doors at the Recycling Facility. *See id.* at ¶ 60. Since there were only

---

[2] Plaintiff denies this allegation and refers the Court to his response to paragraph twenty-six. *See* Dkt. No. 31 at ¶ 51. Paragraph twenty-six of Defendants' Rule 7.1 statement states that "Supervisor Bruning did not discuss his August 31, 2011 interaction with the plaintiff with Councilmen Brooks, Smith, Schoonmaker or dean at or prior to the January 3, 2012 Town reorganization meeting." Dkt. No. 29-12 at ¶ 26. In response, Plaintiff responded as follows: "Denied. Bruning's statements at the February 7, 2012 public meeting and Brooks', Smith's, Schoonmaker's and Dean's failure to disavow those statements at that meeting constitute admissions that the retaliatory reasons stated by Bruning for Mues' termination were the true reasons for his termination and the non-retaliatory reasons for termination that the defendants are now proffering to this Court are pretextual." Dkt. No. 31 at ¶ 26.

four (4) garage doors at the Recycling Facility, Defendant Bruning believed that the task to scrape and paint the garage doors should have taken only a few days to complete. *See* Dkt. No. 29-12 at ¶ 61; Dkt. No. 31 at ¶ 61. Defendants contend that, as of July and August 2011, Plaintiff had not completed scraping and painting the garage doors and Plaintiff admits that it took him "several months" to complete this task. *See id.* at ¶¶ 62-63. Defendant Bruning reprimanded Plaintiff "for his poor job performance in taking too long to complete the painting of the garage doors at the Recycling Facility." Dkt. No. 31 at ¶ 64. Plaintiff took offense to the reprimand and believed that Defendant Bruning unfairly assessed his job performance. *See id.* at ¶ 65.

Additionally, Plaintiff admitted to removing materials dropped off at the Recycling Facility to his house, and then selling the materials on E-Bay for his own personal profit. *See id.* at ¶ 67. Plaintiff believed that it was proper to keep the money he received from this activity. *See id.* at ¶ 68. Defendant Bruning reprimanded Plaintiff for this conduct. *See id.* at ¶ 70.

During his deposition, Plaintiff also admitted that, during the hours he was supposed to be working, he campaigned for others who were running for office. *See id.* at ¶ 81. Plaintiff was warned by Defendant Bruning that he should not participate in political campaigning during the hours he was supposed to be working. *See id.*

On January 3, 2012, during an organization meeting, the Town Board was presented with a motion to vote on Resolution No. 18 of 2012. Resolution No. 18 was to appoint Plaintiff to the position of Recycling Manager. Defendant Bruning, however, made a request to table the vote on Resolution No. 18, and it was never adopted or voted upon by the Town Board. Later at the meeting, Defendant Bruning introduced before the Town Board Resolution No. 23 of 2012 to appoint Scott Mickelson to the position of Recycling Manager, which was passed unanimously. *See* Dkt. No. 31 at ¶¶ 86, 88.

Defendants contend that Scott Mickelson was selected instead of Plaintiff "based upon their knowledge of the plaintiff's job deficiencies, and their belief that the Town would be better served by having the Town's Recycling Facility staffed by Mr. Mickelson." Dkt. No. 29-12 at ¶ 88. Plaintiff, however, contends that Defendants' actions were in response to his political activities. In support of his claim, Plaintiff provided a transcript of a recording, as well as the recording itself, from a February 2012 Town Board meeting, at which a petition was read into the record asking that the Town rehire Plaintiff. *See* Dkt. No. 32-1. After the petition was read into the record, the following discussion took place:

> ROBERT BRUNING: Okay. I do have a few things to say and this is probably the first opportunity that I have had to tell my side of the story. I have heard all kinds of stories around town, all kinds of things that are not true, that didn't happen. I am going all the way back to September. I got an email forwarded to me from a person in town, an email that Ed Mues had mailed out to a very large distribution soliciting candidates to run against me for Town Supervisor. I think what bothers me most in the email and I'll quote the email "even if you don't want the job, throw your hat in the ring." Now to me that just makes is sound like the Town Supervisor's job is a big joke. Throw your hat in the ring. Even if you don't want to do it, throw your hat in the ring. I'll tell you, I was mad when I read that email. I wouldn't have gotten that email except that he didn't realize that some of the people he had on the distribution were Republicans.
>
> I got the email and I was mad. I went up and I met with Ed. I told him "I thought you were not only an employee, I thought you were a friend. Why are you doing this?" He said "Well, I think everybody should have a choice." "Okay, fine Ed" I said, "but why would you want people or encourage people who don't even want the job to throw their hat in the ring." That is insulting to me and I took as an insult, an absolutely personal insult. I always thought of Ed as a friend. I've bent over backwards for Ed Mues to make his job easier. I personally bought his TV for his shed. I went up there early mornings to fix his electric because it wasn't working. I've bent over backwards for Ed Mues and I thought he was a friend and as far as I'm concerned friends don't do that kind of stuff to friends.

In the interest of him being a Democrat and me being a Republic, that's what this is all about. Okay, fine. I told him at that point, I said "Ed, why don't you do yourself a favor and just stay out of politics. Stay here, do your job. You do a good job here, just do your job and stay out of politics. Okay? Because you're gonna get yourself in trouble." And he said, well I forget what he said. I said "you have to understand, Ed. You know who appointed you to this job?" No, I take that back. I said "Do you know who you work for?" and he said "I work for the people." I said "you know who appoints you to work for the people" and he said "you do." "You know who can unappoint you. So by attacking me in your emails, that was a personal attack as far as I'm concerned. Don't be attacking me in your emails." I told him "Ed, stay out of politics. This is not a job who should be involved in politics so just stay out of it. Okay?"

So things were going fine and then suddenly I start getting this, this, this junk in the mail. All of which is either untrue, misleading, false. Every bit of this stuff. I know that Ed Mues was part of the group that created this stuff, that published it, sent it to every taxpayer. Ed Mues is part of this group. Now, so here you have a man that this is what he thinks of the Town Board, that the Town Board is basically not doing the job. You can say all you want, what he said, he can say what he wants, but then when you send it out to every taxpayer in the town that says that the Town Board is not doing its job – because that's what this says – the Town Board is not doing the job, and he was part of it. He was one of the primary people who created the group that created this stuff, and I know that. So I said this is my opinion. The Town Board will give out her opinion when I'm done.

Nothing seemed to . . . for the purposes of campaigning for his candidates, because he nominated these candidates, these were his candidates, it just doesn't seem to me that as a Town employee working at a job for the Town appointed by the Town in a position where he has a captive audience. He has total access to the entire town population. If this the way he feels about the Town Board and he is going to publish this about the Town Board, why in the world would the Town Board then say "Oh, yeah, we love you there Ed. We'll appoint you for another year." So he continued to spread this stuff. No, I don't work that way. You know the old expression "you don't bite the hand that feeds you." And that's what he's done. It wasn't only the Town Board that was mad about this stuff, there were a lot of people in town who were mad about it because they knew it was crap.

SPEAKER 1: This is not connected directly to Ed – you can't say these fliers are connected to Ed Mues.

BRUNING: Oh, yes I can.

SPEAKER 1: How can you say that?  How can you prove that?  I know for a fact that Ed didn't write those fliers, didn't mail those fliers.

BRUNING: Ed Mues told me he was there – Ed Mues told me . . .

SPEAKER 1: So somebody can't go to a meeting?

BRUNING:   Ed Mues told me ...

SPEAKER 1: You don't know what was said at that meeting.  People have different opinions at meetings.

BRUNING:   He contributed to this.

SPEAKER 1: Ed Mues did not write that letter.

BRUNING:   He contributed to this.

SPEAKER 1: Contributed means that he wrote.  He did not write that letter.  Yeah, he may have been at a meeting where a discussion took place, where different opinions were expressed, but he did not write and distribute that letter.  And even if he had, he wasn't at his job when he did that.  So how did that interfere with his job duties?

SPEAKER 2: What got back to me were a lot of comments from people wondering if they were going to a recycling center or were in the middle of some political grandstanding site and that is not what people go there to do.

SPEAKER 1: People were saying he was grandstanding at the dump?

SPEAKER 2: That is what I heard.

SPEAKER 1: Personally, I heard Ed Mues defend Bill Bruning a number of times at the dump.  That is what I heard.

SPEAKER 3: Can I address the Board before it turns into a heated . . .

SPEAKER 1: I would also like to ask . . . what I would like to know personally at this meeting is, politics aside, because the people who elected the people here did so to serve the town. I don't really care about your personal political agendas. What I want to know is how this decision reflected the best interest of the town. Was there a discussion about how this would affect the best interest of the town?

BRUNING: Yup.

SPEAKER 1: And how was it meant to improve the town?

BRUNING: I don't think this kind of stuff is in the best interest of the town.

SPEAKER 1: So you're saying by firing Ed you meant to intimidate others from stopping to speak politically because Ed Mues didn't do that and even if he did he could do it now. It has nothing to do with his job.

BRUNING: Ed can speak politically all he wants to – all he wants to. But he's not going to do it on my time, okay? And I'm not going to provide him a captive audience to do it. That's my point. Ed can do all the stuff he wants to, all of it. But he's not gonna do it on town time and where I'm gonna provide him a captive audience to do it.

Dkt. No. 32-1 at 2-6.

In their motion for summary judgment, Defendants first argue that all claims against Defendants Bruning, Dean, Schoonmaker, Smith and Brooks in their official capacities must be dismissed because they are redundant of Plaintiff's claims against the Town of Denning. *See* Dkt. No. 29-11 at 8-10. Second, Defendants contend that Plaintiff's First Amendment retaliation claims are without merit because (1) there is no causal connection between Plaintiff's speech and the resolution redefining the status of the position and (2) there is no causal connection between Plaintiff's speech and the appointment of Mr. Mickelson. *See id.* at 10-16. Third, Defendants

argue that the complained of actions on the part of the Town Board are not actionable pursuant to the doctrine of absolute legislative immunity. *See id.* at 17-18. Fourth, Defendants claim that the individual Defendants are entitled to qualified immunity. *See id.* at 18-20. Finally, Defendants argue that Plaintiff's claim for punitive damages should be dismissed because the evidence establishes that Defendants' actions were not the product of evil motive or intent, or recklessly or callously indifferent to Plaintiff's federally protected rights. *See id.* at 20-21.

## III. DISCUSSION

### A.    Standard of review

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the

court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.     Official capacity claims**

Defendants contend that all claims against Defendants Bruning, Dean, Schoonmaker, Smith and Brooks in their official capacities must be dismissed because the claims are duplicative of Plaintiff's claims against the Town of Denning. *See* Dkt. No. 29-11 at 8-9. Plaintiff concedes this point. *See* Dkt. No. 34 at 15-16.

In light of Plaintiff's concession, the Court grants this aspect of Defendants' motion for summary judgment. Accordingly, the official capacity claims against Defendants Bruning, Dean, Schoonmaker, Smith and Brooks are dismissed.

**C.     Absolute immunity**

Defendants argue that the individually named Defendants are entitled to absolute legislative immunity for the following acts: (1) voting to approve Resolution No. 43 of 2011 to designate the Recycling Manager's position as an appointed position; and (2) voting to approve Resolution No. 23 of 2012 to appoint Scott Mickelson, not Plaintiff, as Recycling Manager. *See* Dkt. No. 29-11 at 17-18. Plaintiff concedes that the individual Defendants are entitled to legislative immunity as to the passage of Resolution No. 43 of 2011. *See* Dkt. No. 34 at 26. Plaintiff, however, argues that absolute legislative immunity does not apply to the passage of Resolution No. 23 of 2012 because it was an administrative act, not legislative. *See id.* at 26-27.

"Under the Supreme Court's functional test of absolute legislative immunity, whether immunity attaches turns not on the official's identity, or even on the official's motive or intent, but on the nature of the act in question." *Almonte v. City of Long Beach*, 478 F.3d 100, 106 (2d Cir. 2007) (citing *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 210 (2d Cir. 2003)) (other citations omitted); *see also Bogan v. Scott–Harris*, 523 U.S. 44, 54 (1998); *Forrester v. White*, 484 U.S. 219, 224, 227 (1988). "More specifically, legislative immunity shields an official from liability if the act in question was undertaken 'in the sphere of legitimate legislative activity.'" *Almonte*, 478 F.3d at 106 (quoting *Bogan*, 523 U.S. at 54, 118 S. Ct. 966). "Local legislators, like their counterparts on the state and regional levels, are entitled to absolute immunity for their legislative activities." *Id.* (citing *Bogan*, 523 U.S. at 49, 118 S. Ct. 966; *Harhay*, 323 F.3d at 210). "As the Supreme Court has explained, the purpose of absolute legislative immunity is to protect legislators from 'deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good.'" *Id.* (quoting *Tenney v. Brandhove*, 341 U.S. 367, 377, 71 S. Ct. 783, 95 L. Ed. 1019 (1951)).

"[A]bsolute legislative immunity does not protect legislators against a claim of an administrative firing, even if the employee's position was later abolished pursuant to a legislative act." *Almonte*, 478 F.3d at 107-08 (citing *Jessen v. Town of Eastchester*, 114 F.3d 7, 8 (2d Cir. 1997) ("Even assuming, without deciding, that the elimination of Jessen's position was a legislative act, his earlier termination from a position which then, at least briefly, remained open was an administrative act that legislative immunity does not protect")). "A personnel decision is administrative in nature if it is directed at a particular employee or employees, and is not part of a broader legislative policy." *Id.* at 108 (citation omitted); *see also Bogan*, 523 U.S. at 55–56 ("The ordinance reflected a discretionary, policymaking decision implicating the budgetary priorities of

the city and the services the city provides to its constituents.  Moreover, it involved the termination of a position, which, *unlike the hiring or firing of a particular employee*, may have prospective implications that reach well beyond the particular occupant of the office. . . . Thus, petitioners' activities were undoubtedly legislative") (emphasis added).  "Administrative 'personnel decisions, even if undertaken by public officials who otherwise are entitled to immunity, do not give rise to [legislative] immunity because such decisionmaking is no different in substance from that which is enjoyed by other actors.'"  *Id.* (quoting *Harhay*, 323 F.3d at 210-11).  As such, in *Harhay*, the Second Circuit concluded that the town board members were not absolutely immune for their actions with respect to the plaintiff's employment, including their vote to table the matter of another employee's resignation, because those actions "were part of a process by which an employment situation regarding a single individual was resolved" and not "the kind of broad, prospective policymaking that is characteristic of legislative action." *Harhay*, 323 F.3d at 211.

In the present matter, the Court finds that Defendants are not entitled to legislative immunity with respect to the passage of Resolution No. 23 of 2012 which appointed Scott Mickelson as Recycling Manager, thereby replacing Plaintiff.  As in *Harhay*, the town board did not simply eliminate a position entirely, rather the tabling of the resolution to reappoint Plaintiff and the passing of Resolution No. 23 of 2012 "were part of a process by which an employment situation regarding a single individual was resolved." *Harhay*, 323 F.3d at 211.  Since the Town Board was not acting in a legislative capacity when it dealt with terminating Plaintiff's employment through the appointment of Scott Mickelson, the individual Defendants are not entitled to legislative immunity.

Based on the foregoing, the Court grants in part and denies in part Defendants' motion for summary judgment on this ground.[3]

## D. First amendment retaliation

First, Defendants contend that there is no causal connection between Plaintiff's speech and the Resolution No. 43 redefining the status of Plaintiff's position. *See* Dkt. No. 29-11 at 11-12. Defendants further argue that the passage of the resolution redefining Plaintiff's position was not an adverse employment action. *See id.* at 11 n.3. Second, Defendants contend that there is no causal connection between Plaintiff's protected speech and the Town Board's January 3, 2012 decision to appoint someone other than Plaintiff to the Recycling Manager's Position. *See id.* at 13-17.

"To survive a motion for summary judgment on a First Amendment retaliation claim, the plaintiff must present evidence which shows '"[(1)] that the speech at issue was protected, [(2)] that he suffered an adverse employment action, and [(3)] that there was a causal connection between the protected speech and the adverse employment action."'" *Cotarelo v. Vill. of Sleepy Hollow Police Dep't*, 460 F.3d 247, 251 (2d Cir. 2006) (quotation omitted). "Further, 'the causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action.'" *Id.* (quotation omitted). "If a plaintiff makes a sufficient showing of each of these elements, summary judgment is not appropriate unless the defendant establishes as a matter of law that he would have taken the same adverse

---

[3] Defendants' motion is only granted insofar as it relates to the passage of Resolution No. 43 of 2011, since Plaintiff has conceded that any claim relating to this resolution is barred by legislative immunity.

employment action even absent the protected conduct." *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007) (citation omitted).

### 1. Adverse employment action

"In the context of a First Amendment retaliation claim . . . retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (quotation marks omitted); *see also Nixon v. Blumenthal*, 409 Fed. Appx. 391, 392 (2d Cir. 2010) (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006)). "Adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Frisenda v. Inc. Village of Malverne*, 775 F. Supp. 2d 486, 510 (E.D.N.Y. 2011) (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999)). "However, 'lesser actions may also be considered adverse employment actions.'" *Id.*; *see also Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) ("Our precedent allows a combination of seemingly minor incidents to form the basis of a constitutional retaliation claim once they reach a critical mass" (citing *Bernheim v. Litt*, 79 F.3d 318, 324-25 (2d Cir. 1996)).

In the present matter, the Court agrees with Defendants that Resolution No. 43 of 2011 cannot be considered an adverse employment action. Plaintiff has not presented any arguments to support a finding that the redefining of the Recycling Manager's position as an "appointed" position constituted an adverse employment action. Plaintiff has not put forth any evidence that as an "appointed" position he had a change in responsibilities, change in job title, or a decrease in hours or pay. Rather, the only impact that Resolution No. 43 of 2011 had was that the Recycling

Manager's position was now subject to appointment by a majority of the Town Board, as opposed to being hired or fired solely by Defendant Bruning as Town Supervisor.

Based on the foregoing, the Court grants Defendants' motion for summary judgment insofar as it seeks dismissal of Plaintiff's retaliation claim relating to the reclassification of the Recycling Manager's position.

### 2. Causation

Defendants contend that there is no causal connection between Plaintiff's protected speech "and the decision made by the Town Board, on January 3, 2012, to appoint someone other than the plaintiff to the Recycling Manager's position[.]" Dkt. No. 29-11 at 13. Moreover, Defendants contend that, "[e]ven as pled in the plaintiff's Complaint, the plaintiff asserts that only Supervisor Bruning made comments to him with respect to his political activities . . . – not any of the four (4) Town Councilmen." *Id.* (emphasis in original). Defendants assert that Defendant Bruning did not report his August 31, 2011 interaction with Plaintiff regarding Plaintiff's email to the members of the Town Board at any time prior to the Town's January 3, 2012 reorganization meeting. *See id.* (citations omitted). Further, Defendants argue that the record establishes each of Town Board members established that their vote not to appoint Plaintiff as Recycling Manager was not based on Plaintiff's speech or political affiliation, but was rather based on Plaintiff's poor job performance. *See id.* at 13-15. Finally, Defendants contend that, even assuming that Plaintiff "could establish that the subject vote not to reappoint [him] to the position of Recycling Manager was motivated, in part, based upon animus towards the plaintiff's political speech by a majority of the Town Board . . . ," Plaintiff's claim must still be dismissed because the record demonstrates

that they would have taken the same action even absent Plaintiff's political speech. *See id.* at 13-16.

It is well settled that proof of causation may be shown indirectly by, among other things, demonstrating that the protected activity was followed closely by a retaliatory action. *See Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)) (other citation omitted); *see also Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Further, the cases demonstrate that the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman–Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001). The relevance of temporal proximity in a particular First Amendment retaliation case turns on its unique facts and circumstances. *See Smith v. Da Ros*, No. 09 Civ. 458(MRK), 2011 WL 839374, *13 (D. Conn. Feb. 25, 2011) (citing *Burkybile v. Bd. of Educ. of Hastings–On–Hudson Union Free Sch. Dist.*, 411 F.3d 306, 314 (2d Cir. 2005)).

Although the Second Circuit has not "drawn a bright line" setting the outer limits beyond which a temporal proximity is too attenuated to find the causal relationship, it has held that periods of time longer than the time period at issue here are sufficient to establish the plaintiff's *prima facie* case. *See Nagle v. Marron*, 663 F.3d 100, 111 (2d Cir. 2011) ("While we have not 'drawn a bright line' defining the maximum time period that can give rise to an inference of causation, six weeks fits comfortably within any line we might draw"); *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 168 (2d Cir. 2006) ("Only a short time passed from [plaintiff's protected] speech to the abolition of his job. The Board abolished [plaintiff's] position on February 26, 2002, a little over three months after his November 7, 2001 letter and only three

weeks after his January 31, 2002 press conference. We cannot agree that these time periods are too long for any inference of retaliatory motive and causation to be drawn").

In the present matter, Plaintiff has put forth sufficient evidence regarding causation to withstand Defendants' motion for summary judgment. First, contrary to Defendants' assertions, Plaintiff's protected activity was not too attenuated with the vote passing Resolution No. 23 for an inference of retaliatory motive and causation to be drawn. Plaintiff sent his email on August 25, 2011 and Resolution No. 23 was passed on January 3, 2012. *See Hubbard v. Total Commc'ns, Inc.*, 347 Fed. Appx. 679, 681 (2d Cir. 2009) (holding that the plaintiff's termination, which "happened a little over four months after her email complaint[,]" was sufficient for the jury to determine that there was a causal connection); *Cioffi*, 444 F.3d at 168; *Nally v. New York*, No. 1:10-CV-1186, 2013 WL 2384252, *27 (N.D.N.Y. May 30, 2013) (holding that a period of "three or four months" between the protected activity and the alleged retaliatory action was sufficient to support a causal connection) (citations omitted).

Plaintiff, however, is not merely relying on temporal proximity of the events to establish causation. As discussed above, on February 7, 2012, after Plaintiff was replaced as Recycling Manager, Defendant Bruning made numerous statements at a Town Board meeting that could lead a reasonable juror to believe that Plaintiff was fired because of his speech. *See* Dkt. No. 32-1 at 2-6. For example, Defendant Bruning stated the following:

> If this the way he feels about the Town Board and he is going to publish this about the Town Board, why in the world would the Town Board then say "Oh, yeah, we love you there Ed. We'll appoint you for another year." So he continued to spread this stuff. No, I don't work that way. You know the old expression "you don't bite the hand that feeds you." And that's what he's done. It wasn't only the Town Board that was mad about this stuff, there were a lot of people in town who were mad about it because they knew it was crap.

*Id.*

Moreover, the Court finds compelling Plaintiff's argument that the silence of Defendants Dean, Schoonmaker, Smith and Brooks regarding Defendant Bruning's statements at the February 7, 2012 meeting could be deemed as an admission by silence. *See* Dkt. No. 34 at 22-23. "Under established principles an admission may be made by adopting or acquiescing in the statement of another." Fed. R. Evid. 801(d)(2) Advisory Committee Note. "When silence is relied upon, the theory is that 'the person would, under the circumstances, protest the statement made in his presence, if untrue.'" *Phipps v. Comprehensive Cmty. Dev. Corp.*, No. 00 Civ. 6063, 2005 WL 287413, *13 (S.D.N.Y. Feb. 4, 2005) (quoting Fed. R. Evid. 801(d)(2) Advisory Committee Note); *see also United States v. Ward*, 377 F.3d 671, 675 (7th Cir. 2004) (holding that "a statement may be adopted as long as the statement was made in the defendant's presence, the defendant understood the statement, and the defendant has the opportunity to deny the statement but did not do so") (citation omitted).

Defendant Bruner's comments regarding Plaintiff's termination and the political activities in which he engaged are clearly the types of statements that a reasonable person in the Town Board's position would have protested if untrue. The silence of Defendants Dean, Schoonmaker, Smith and Brooks in the face of Defendant Bruning's comments regarding the Town Board's reason for replacing Plaintiff "is sufficiently placed in context such that a juror could reasonably conclude that [each Defendant] heard, understood and acceded to the statement at issue." *Phipps*, 2005 WL 287413, at *14; *see also Amico v. County of Monroe*, No. 03-CV-6097, 2004 WL 2966950, *7 (W.D.N.Y. Dec. 21, 2004) (holding that the defendant's failure to deny statement made at a meeting constituted an admission by silence for purposes of the pending motion) (citing *United States v. Flecha*, 539 F.2d 874, 877 (2d Cir. 1976)).

Further, according to the parties' testimony, not a single board member made any mention of Plaintiff's alleged unsatisfactory job performance during the January 3, 2012 meeting at which they tabled the resolution to appoint Plaintiff and then later passed a resolution to appoint Mr. Mickelson. This lends support to the inference that Defendants' alleged non-retaliatory reasons for their vote that they are offering is, in fact, pretextual. *See Pascal v. Storage Tech. Corp.*, 152 F. Supp. 2d 191, 213 (D. Conn. 2001). Additionally, Defendant Bruning stated the following at the February 7, 2012 meeting: "Ed, why don't you do yourself a favor and just stay out of politics. Stay here, do your job. You do a good job here, just do your job and stay out of politics." Dkt. No. 32-1 at 3. This statement supports Plaintiff's position that he was fired for his protected activities, not because of any alleged deficiencies in the performance of his job.

Finally, again at the February 7 meeting, Defendant Bruning stated that Plaintiff needed help performing some of his job responsibilities, including putting garbage in containers and shoveling snow. When asked if that was the reason he was terminated, Defendant Bruning responded, "[no], that is not why he was removed." As Plaintiff points out, this statement contradicts one of Defendant Bruning stated reasons for Plaintiff's termination. *See* Dkt. No. 29-2 at ¶ 30 (stating that he voted to appoint Mr. Mickelson "based upon the numerous job deficiencies displayed by the plaintiff during the course of his employment with the Town, and my belief that the Town would be better served by having the Town Recycling Facility staffed by Mr. Mickelson").

Based on the foregoing, the Court denies Defendants' motion for summary judgment on this ground.

### 3. Rebuttal of Plaintiffs' prima facie case

It is well settled that "even if there is evidence that the adverse employment action was motivated by protected speech, the government can avoid liability if it can show that it would have taken the same adverse action in the absence of the protected speech." *Heil v. Santoro*, 147 F.3d 103, 110 (2d Cir. 1998) (citing *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. at 287, 97 S. Ct. 568) (other citations omitted). As the Second Circuit has explained, "[t]his principle prevents an employee who engages in unprotected conduct from escaping discipline for that conduct by the fact that it was related to protected conduct." *Id.* (citations omitted). Thus, the Second Circuit has held that "[c]onduct that is properly initiated, reasonably executed, independently justified and equally administered – regardless of any animosity towards the plaintiff – does not give rise to a constitutional claim for retaliatory harassment." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 109 (2d Cir. 2000) (citing *Ingraham v. Wright*, 430 U.S. 651, 674, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977)) (other citations and footnote omitted).

In the present matter, the Court finds that Defendants have failed to establish that they would have taken the same adverse action absent Plaintiff's protected speech. Non of the individual Defendants made any statements regarding Plaintiff's alleged unsatisfactory job performance during the January 3, 2012 meeting. Further, Defendants' present contentions that Plaintiff was unsatisfactorily performing his job prior to his termination is belied by Defendant Bruning's statement at the February 7, 2012 meeting. Specifically, Defendant Bruning claimed that he said the following to Plaintiff: "Ed, why don't you do yourself a favor and just stay out of politics. Stay here, do your job. You do a good job here, just do your job and stay out of politics."

Based on the foregoing, the Court denies Defendants' motion for summary judgment on this ground.

**E.     Qualified immunity**

Defendants contend that the individual Defendants are entitled to qualified immunity because their affidavits "clearly establish that Resolution No. 23 of 2012 – which appointed Scott Mickelson, not the plaintiff, as Recycling Manager – was enacted based upon the numerous instances of poor job performance and misconduct observed by, and brought to the attention of, the named defendants." Dkt. No. 29-11 at 19. Defendants continue that, "[b]ecause the defendants established, prima facie, that their challenged conduct did not clearly violate an established federally protected right, qualified immunity provides an additional ground for granting defendants' summary judgment motion." *Id.* (citing *Smith v. County of Suffolk*, 2013 WL 752635 (E.D.N.Y. Feb. 27, 2013)).

Qualified immunity protects government officials from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (holding that qualified immunity is not merely immunity from damages but also "immunity from suit"). "[T]he salient question [in determining qualified immunity] is whether the state of the law . . . gave [the defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). As qualified immunity is an affirmative defense, the burden of pleading it falls on the defendants. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citations omitted); *see also Varrone*

*v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997) (holding that the "defendants bear the burden of showing that the challenged act was objectively reasonable" (citation omitted)).

The qualified immunity determination consists of two steps, which a court may consider in either order. *See Seri v. Bochicchio*, 374 Fed. Appx. 114, 116 (2d Cir. 2010) (citation omitted). The first step is to determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 129 S. Ct. 808, 816 (2009) (citations omitted). The second is a determination of "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (citation omitted).

A right is "clearly established" if "[t]he contours of the right . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "To determine whether a right is clearly established, we look to: (1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question; and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010) (citing *Schecter v. Comptroller of City of N.Y.*, 79 F.3d 265, 271 (2d Cir. 1996)). "Courts 'do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Walker v. Schult*, 717 F.3d 119, 125-26 (2d Cir. 2013) (quoting *Ashcroft v. al-Kidd*, ___ U.S. ___, 131 S. Ct. 2074, 2083 (2011)). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court. *See id.* at 368 (citation

omitted).  Any unresolved factual issues, however, must be resolved by the jury.  *See id.* (quoting *Kerman*, 374 F.3d at 109) (other citations omitted).  Once the court has received the jury's decision as to "what the facts were that the officer faced or perceived," the court must then "make the ultimate legal determination of whether qualified immunity attaches on those facts." *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (quotation omitted); *see also Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) (quotation omitted).

In the present matter, the Court finds that Defendants have not established that they are entitled to qualified immunity at this stage.  As discussed above, the law at the time was clearly established that it was impermissible to terminate an employee in retaliation for engaging in protected speech.  *See Cotarelo*, 460 F.3d at 251 (citation omitted).  Further, looking at the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that it was objectively unreasonable for Defendants to believe that they were acting in a fashion that did not violate Plaintiff's federally protected rights.  As discussed, the record contains evidence indicating that Plaintiff was replaced as Recycling Manager because of his speech and not because of his alleged inadequate job performance and alleged policy infractions as Defendants contend.  That is to say, because a reasonable jury could conclude that it was objectively unreasonable for Defendants to believe that they were not violating Plaintiff's federally protected rights, qualified immunity does not provide a ground for granting Defendants' motion for summary judgment.  *See Frisenda v. Incorporated Vill. of Malverne*, 775 F. Supp. 2d 486, 523 (E.D.N.Y. 2011) ("Specifically, according to the Second Circuit, the very fact that the Court has determined — as described *supra* — that a rational jury could find, if all of plaintiff's evidence is credited and all reasonable inferences are drawn in his favor, that the individual defendants retaliated against plaintiff for exercising his First Amendment rights, is independently sufficient to preclude the

Court from determining as matter of law that the individual defendants' actions were objectively reasonable. In other words, if the individual defendants did in fact intentionally retaliate against plaintiff because of his First Amendment activity, they would not be protected by qualified immunity").

Based on the foregoing, the Court finds that questions of fact preclude the Court from granting Defendants' motion for summary judgment on qualified immunity grounds.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Plaintiff's First Amendment retaliation claim insofar as it relates to the passage of Resolution No. 43 of 2011 reclassifying the Recycling Manager position is **DISMISSED**; and the Court further

**ORDERS** that the claims against the individual Defendants in their official capacities are **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 2, 2014
     Albany, New York

Mae A. D'Agostino
U.S. District Judge